## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY EMPLOYEES UNION )
1750 H Street, N.W. )
Washington, D.C.  20006, )
                         )
                Plaintiff, )
                         )
       v. )
                         )
United States of America, )      Case No. 1:19-cv-50
                         )
and )
                         )
JOHN MICHAEL MULVANEY, in his )
official capacity as Director of the Office of )
Management and Budget, )
725 17th Street, N.W. )
Washington, D.C.  20503 )
                         )
               Defendants. )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Plaintiff National Treasury Employees Union (NTEU) is a labor organization that represents approximately 150,000 federal government employees.  A partial government shutdown affecting numerous federal agencies has been in effect since December 22, 2018.  Despite this lapse in appropriations, these executive branch agencies have required tens of thousands of NTEU-represented federal employees to report to work as "excepted employees."  The decision to require them to work was based upon an Office of Management and Budget (OMB) directive issued on

January 19, 2018, purporting to implement the Antideficiency Act, 31 U.S.C. § 1342.

These employees are being required to work without pay indefinitely.  It is now a virtual certainty that the next regularly scheduled pay day will pass without paychecks being issued to these workers.  <u>See</u> Hayley Miller, "Mick Mulvaney: Government Shutdown Likely To 'Drag On A Lot Longer,'" HuffingtonPost.com (Jan. 6, 2019).

The Constitution commands that "No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const., Art. I, § 9, cl. 7.  This provision prohibits the executive branch from authorizing payment, or incurring obligations to pay, absent appropriations that have been made pursuant to laws enacted by Congress.  The Appropriations Clause vests the power of the purse in Congress, and the Antideficiency Act, 31 U.S.C. § 1342, is unconstitutional insofar as it purports to authorize the executive branch to obligate funds that have not been appropriated.

Further, the Antideficiency Act only authorizes the executive branch to require employees to work, without pay, in limited circumstances involving an imminent threat to human life or property.  OMB has purported to authorize agencies to require employees to work in a far broader range of circumstances than the Antideficiency Act allows.

Plaintiff NTEU thus seeks a declaration that Section 1342 of the Antideficiency Act is unconstitutional.  NTEU also seeks to enjoin the United States

2

from relying on Section 1342 to require certain employees to work without pay during a lapse in appropriations.  Alternatively, NTEU requests a declaration that the OMB directive being used by agencies to determine which employees may be required to report to work is inconsistent with the Antideficiency Act, and an injunction against the federal agency reliance on the directive to require employees to report to work without pay.

## JURISDICTION

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

## VENUE

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.     Plaintiff NTEU is an unincorporated association with its principal place of business at 1750 H Street, N.W., Washington, D.C. 20006.  NTEU is, pursuant to Title VII of the Civil Service Reform Act, Public Law No. 95-454, 92 Stat. 1111, the exclusive bargaining representative of approximately 150,000 federal employees in 32 federal departments and agencies, several of which are implicated by the instant partial government shutdown.  NTEU represents the interests of these employees by negotiating collective bargaining agreements; filing and arbitrating grievances under such agreements; filing unfair labor practices; petitioning Congress for favorable working conditions, pay, and benefits; and enforcing employees' collective and individual rights in federal courts.

4.       NTEU brings this action on behalf of itself and its members, whose rights are being violated through the actions of the defendants.

5.       Defendant United States of America, through its executive branch agencies, has obligated funds that are not appropriated and is requiring employees to report to work without pay on penalty of discipline.

6.       Defendant John Michael Mulvaney is the Director of OMB.  OMB is responsible for setting executive branch policy and issuing directives regarding expenditures.  OMB has issued directives, such as the directive at issue in this lawsuit (discussed below), to federal agencies instructing them concerning which employees may be required to work during a lapse in appropriations.  OMB also approves agency "contingency plans" setting forth which employees will be required to report to work during a lapse in appropriations.

## STATEMENT OF CLAIMS

7.       On December 22, 2018, appropriations lapsed for several executive branch agencies at which NTEU represents bargaining unit employees, including: the Internal Revenue Service (and other Department of Treasury offices and bureaus), United States Custom and Border Protection, the Federal Law Enforcement Training Center, the Commodity Futures Trading Commission, the Environmental Protection Agency, the Federal Communications Commission, the Food and Drug Administration, the Federal Elections Commission, the National Parks Service, the Patent and Trademark Office, the Securities and Exchange Commission, and the United States Department of Agriculture.

8.      Notwithstanding the ongoing lapse in appropriations, tens of thousands of federal employees represented by NTEU have been required to report to work since December 22, 2018.

9.      In directing employees excepted from the partial government shutdown to report to work, the defendants have purported to rely on the Antideficiency Act, 31 U.S.C. §§ 1341, 1342.

10.      That Act generally prohibits agencies from involving the government "in a contract or obligation for the payment of money before an appropriation is made unless authorized by law." 31 U.S.C. § 1341.  It provides, however, that the United States may "employ personal services exceeding that authorized by law" in "emergencies involving the safety of human life or the protection of property."  31 U.S.C. § 1342.

11.      Congress amended Section 1342 of the Antideficiency Act in 1990 to provide explicitly that "[a]s used in this section, the term 'emergencies involving the safety of human life or the protection of property' does not include ongoing, regular functions of government the suspension of which would not imminently threaten the safety of human life or the protection of property."

12.      Congress added this clarifying and limiting language in 1990 because of "what the conferees believe[d] might be an overly broad interpretation" by the Attorney General in 1981 "regarding the authority for the continuance of Government functions during the temporary lapse in appropriations, and [to] affirm

that the constitutional power of the purse resides with Congress." H.R. Conf. Rep.

No. 101-964, at 1170 (1990).

13.     On January 19, 2018, Defendant Mulvaney, Director of OMB, sent a

memorandum to the heads of all executive departments and agencies, requiring

that they review and, if needed, update their contingency plans for agency

operations during a lapse in appropriations.  A copy of this directive is available at

https://www.whitehouse.gov/wp-content/uploads/2017/11/m-18-05-REVISED.pdf.

14.     The OMB directive directs agencies to OMB Circular A-11.  The

directive further states that agencies "should refer to relevant legal opinions issued

by the Attorney General and the Office of Legal Counsel of the Department of

Justice, which set forth the legal requirements imposed by the Antideficiency Act

(Act) during a lapse in appropriations and the guiding standards agencies should

use in making decisions under the Act during a lapse in appropriations."  Directive

at 1.

15.     OMB Circular No. A-11, at Section 124, points agencies to Office of

Legal Counsel (OLC) opinions from 1995, 1981, and 1980 for guidance on the

Antideficiency Act, as applied during a lapse in appropriations.

16.     The 1995 OLC opinion to which OMB directs executive branch

agencies states that, "even after the 1990 amendment" to the Antideficiency Act

(discussed above), the Attorney General's 1981 broad construction of the

Antideficiency Act's emergency exception was still "fair."  <u>See</u> Memorandum for

Alice Rivlin, Director, Office of Management and Budget, from Walter Dellinger,

Assistant Attorney General, Office of Legal Counsel, Re: Government Operations in the Event of a Lapse in Appropriations at 8 (Aug. 16, 1995).

17.    The 1995 OLC opinion thus goes on to reiterate the very interpretation of Section 1342's emergency exception that Congress viewed as overbroad and from which it consciously departed through the 1990 amendment:  that, for the exception to apply, there need only be "<u>some reasonable and articulable connection</u> between the function to be performed and the safety of human life or the protection or property" and "there is "<u>some reasonable likelihood</u> that the safety of human life or the protection of property would be compromised, in some degree, by the delay in the performance of the function in question." <u>Id.</u> at 8 (adding that "to forestall possible misinterpretations, the second criteria's use of the phrase 'in some degree' should be replaced with the phrase, 'in some significant degree'") (emphases added).

18.    The 1995 OLC opinion's overbroad test—requiring only a "reasonable" connection to protecting life or property and only a "reasonable likelihood" that life or property would be compromised if the employee did not continue to perform his or her official functions—is inconsistent with the plain text of Section 1342.  The Antideficiency Act requires the existence of an "imminent[] threat[]" to human safety or property to justify continued work during a lapse in appropriations.

19.    Acting pursuant to the OMB directive and the 1995 OLC opinion endorsed by OMB, federal agencies implicated by the current lapse in appropriations drew up contingency plans designating tens of thousands of NTEU-

represented employees as excepted employees, whose services could be required in a government shutdown, notwithstanding the Antideficiency Act.

20.    Many of the employees designated as excepted, in accordance with the OMB directive, including many members of Plaintiff NTEU, are persons whose services involve only "the ongoing, regular functions of government, the suspension of which would not imminently threaten the safety of human life or the protection of property." 31 U.S.C. § 1342.  Their excepted status is thus inconsistent with the plain text of the Antideficiency Act.

21.    Pursuant to federal law and regulation, federal employees are entitled to be paid wages for their work.  Yet the NTEU-represented excepted employees are being required to work despite the lapse in appropriations have been told that they will not be paid during the period of lapsed appropriations for that work.

22.    Indeed, the President's Acting Chief of Staff has explained that the next regularly scheduled pay day will pass without paychecks being issued to these workers for their labors.  See Hayley Miller, "Mick Mulvaney: Government Shutdown Likely To 'Drag On A Lot Longer,'" HuffingtonPost.com (Jan. 6, 2019).

23.    The excepted employees whom NTEU represents will not be paid for the work they are performing during the lapse in appropriations.  Their employing agencies have no legal authority to obligate the United States to pay their salaries.

24.    In purporting to obligate the United States to spend money that has not been appropriated, the executive branch has usurped the legislation function by transferring to the President the power over spending that the Constitution vests in

Congress.  In doing so, it has caused injury to NTEU members who are working during the lapse in appropriations without pay.

25.    There is a substantial likelihood that thousands more NTEU-represented employees will soon be designated as excepted and called back into service during the current shutdown.  The President has declared that the partial government shutdown will not delay the issuance of federal tax refunds—even though there are not enough employees at IRS working during the lapse in appropriations to fulfill this promise.  See Darla Mercado, "White House Promises Tax Refunds Will Go Out, But There's Hardly Anyone At The IRS To Do The Work," CNBC.com (Jan. 7, 2019) (noting that 12% of IRS employees are working during the lapse in appropriations).  Plaintiff NTEU thus believes that it is substantially likely that thousands of IRS employees whom it represents will shortly be forced to return to work during the lapse in appropriations.  These employees would not be paid for the work that they perform during the lapse in appropriations.

## CAUSES OF ACTION

### Count 1:  Section 1342 of the Antideficiency Act violates the Constitution's Appropriations Clause.

26.    Plaintiff reasserts the allegations contained in paragraphs 1 through 25 of this complaint as though contained herein.

27.    The Appropriations Clause of the Constitution commands that "No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const., Art. I, § 9, cl. 7.

28.     To the extent that the Antideficiency Act purports to authorize executive agencies to obligate funds for the payment of employees, absent appropriations made by law, that Act is unconstitutional.

29.     The obligation of funds by Defendant United States, in absence of a congressional appropriation, in the instant lapse in appropriations thus violates the plain and unequivocal language of the Appropriations Clause.

30.     This illegal obligation has injured thousands of NTEU-represented employees, who are being required to work without pay during the current lapse in appropriations.

**Count 2:  The OMB Directive is inconsistent with the Section 1342 of the Antideficiency Act.**

31.     Plaintiff reasserts the allegations contained in paragraphs 1 through 30 of this complaint as though contained herein.

32.     The Antideficiency Act forbids an agency from obligating the United States to pay for employee services unless those services are needed in connection with an imminent threat to human life or property.  31 U.S.C. § 1342.

33.     The OMB directive issued on January 19, 2018 purports to authorize agencies to designate employees as excepted and to require them to work during a lapse in appropriations, even where their services are not rendered in connection with covered emergencies, but instead involve "the ongoing, regular functions of government, the suspension of which would not imminently threaten the safety of human life or the protection of property."  31 U.S.C. § 1342.

34.     The OMB directive is inconsistent with the plain text of the

Antideficiency Act and thus constitutes unlawful agency action within the meaning

of the Administrative Procedure Act, 5 U.S.C. § 701, et seq.

35.     Thousands of Plaintiff NTEU's members are injured by the OMB

directive because it has resulted in their designation as excepted employees,

thereby invoking the requirement that they work without pay during this period of

lapsed appropriations.

## REQUEST FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff NTEU requests judgment

against Defendants United States and Mulvaney:

A.     Declaring that the obligation of monies by the United States to pay for

employee services, in the absence of any appropriation, violates Article I, section 9,

clause 7 of the United States Constitution;

B.     Declaring Section 1342 of the Antideficiency Act unconstitutional;

C.     Enjoining defendants from giving effect to Section 1342 of the

Antideficiency Act, including by requiring Plaintiff NTEU's members to work

during a period of lapsed appropriations;

D.     Declaring that the OMB directive is inconsistent with the

Antideficiency Act, to the extent that it purports to authorize agencies to designate

employees as excepted when the suspension of their services would not imminently

threaten the safety of human life or the protection of property;

E.     Ordering Defendant Mulvaney to withdraw the illegal OMB directive;

F.      Enjoining defendants from implementing OMB's illegal directive;

G.      Ordering defendants to pay reasonable attorneys' fees and costs, as determined by the Court; and

H.      Ordering such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Gregory O'Duden

_____
GREGORY O'DUDEN
General Counsel

/s/ Larry J. Adkins

_____
LARRY J. ADKINS
Deputy General Counsel

/s/ Paras N. Shah

_____
PARAS N. SHAH
Assistant Counsel

/s/ Allison C. Giles

_____
ALLISON C. GILES
Assistant Counsel

/s/ Jessica Horne

_____
JESSICA HORNE
Assistant Counsel

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, N.W.
Washington, D.C.  20006
Tel:  (202) 572-5500
Fax:  (202) 572-5645
greg.oduden@nteu.org
larry.adkins@nteu.org
paras.shah@nteu.org
allie.giles@nteu.org
jessica.horne@nteu.org

January 9, 2019         Attorneys for Plaintiff NTEU