# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Case No. 19-50 (RJL) ) ) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) |
| Defendants. | ) ) |

**FILED**

**JAN 1 8 2019**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| JANETTE HARDY, *et al.*, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Case No. 19-51 (RJL) ) |
| DONALD J. TRUMP, *et al.*, | ) ) |
| Defendants. | ) ) |

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO ("NATCA"), *et al.*, | ) ) ) ) |
| Plaintiffs, | ) Civil Case No. 19-62 (RJL) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) |
| Defendants. | ) |

# MEMORANDUM ORDER
(January 16, 2019)

Having heard the parties' arguments on the pending temporary restraining orders ("TROs"), I am now in a position to rule on that particular form of extraordinary relief. As I explained in my order over the weekend, I will defer ruling on their preliminary injunction requests until the parties have had a chance to fully brief and argue the varied and novel issues these cases present.

Let me note something, however, at the outset: I empathize with the plaintiffs' positions. They are not the ones at fault here. Indeed, the Judiciary is dealing with the same realities that the Executive Branch agencies are facing. I have no doubt whatsoever that there is real hardship being felt by innocent federal employees across the country right now. Indeed, several plaintiffs have filed declarations to that effect, and the Government rightfully acknowledged as much in their motion to postpone this hearing.

But I want and need to make something very clear: the Judiciary is not just another source of leverage to be tapped in the ongoing internal squabble between the political branches. We are an independent, co-equal branch of government, and whether or not we can afford to keep our lights on, our oath is to the Constitution and the faithful application of the law. In the final analysis, the shutdown is a ***political*** problem. It does **NOT**, and can **NOT**, change this Court's limited role. Of that I am very certain.

Now, as counsel have discussed, these cases raise a number of statutory and constitutional claims. Plaintiffs claim, for example, that the Executive Branch's determination of which federal employees are "excepted" from the shutdown—meaning

they must continue to work without compensation or else risk adverse consequences—violates the Anti-Deficiency Act, 31 U.S.C. § 1341, because the Executive is taking on future obligations to pay excepted employees without an existing appropriation from Congress.

Plaintiffs make a related claim—and this really seems to be the crux of these lawsuits—that the Executive has adopted an overbroad interpretation of § 1342 of the Anti-Deficiency Act, which effectively allows the Executive to require employees to work without pay in "emergencies involving the safety of human life or the protection of property." Plaintiffs argue that they do not fit into the emergency exception because their employment relates to "ongoing, regular functions of government" that, if suspended, would not "imminently threaten" human life or property, as stated in the statute.

On the statutory side, the *Hardy* and *NATCA* plaintiffs also raise minimum wage and overtime claims under the Fair Labor Standards Act. And on the constitutional side, the *Hardy* and *NATCA* plaintiffs claim (1) that the Executive's interpretation of the Anti-Deficiency Act violates Article 1's Appropriations Clause; (2) that their 5th Amendment Due Process rights have been violated; and (3) that they have been forced into involuntary servitude in violation of the 13th Amendment.

The *NATCA* member plaintiffs seek a TRO requiring the relevant Executive agencies to pay them money to which they are entitled but that the agencies do not have right now. The *NTEU* and *Hardy* plaintiffs want me to issue a TRO effectively canceling the Executive Branch's determinations that certain federal employees are excepted and must continue to work without pay.

Turning to the standard for the extraordinary injunctive relief sought here, a TRO is reserved for cases where plaintiffs will suffer irreparable injury before a preliminary injunction hearing is even held. It is an extraordinary, if not drastic, remedy. I do not need to repeat the well-known four-factor test for a TRO or preliminary injunction, but I think it is fair to say that each of the foregoing categories of claims have varying likelihoods of success on the merits, and that I would benefit from full, adversarial briefing on those issues. I think it is also fair to say—putting aside whether the injuries alleged are *irreparable*—that at least some of the plaintiffs here are alleging real harm, financial and otherwise. As I said, I have read their declarations.

But a TRO is designed to freeze the state of affairs, not throw the status quo into disarray. The TROs sought here would do the latter. Moreover, the emergency relief standard is a sliding scale, and one of the factors I have to weigh is whether granting the relief sought is in the public interest. NATCA would effectively have me order the Federal Aviation Administration to pay NATCA's members' unpaid salaries with money that the FAA does not have right now. As plaintiffs well know, Congress has the power of the purse, not me. I cannot grant injunctive relief in that form.

The *Hardy* and *NTEU* plaintiffs would have me, in effect, give all currently excepted federal employees—numbering in the hundreds of thousands across dozens of agencies—the option not to show up for work tomorrow. These are employees who perform functions that the relevant agencies have determined bear on the safety of human life and/or the protection of property. If I were to issue a TRO, there is no way to know how many of

4

these excepted employees would choose not to report to work tomorrow, and there is no way to know what public services would therefore go unprovided.

It would be profoundly irresponsible under these circumstances—with no record whatsoever telling me what government functions would be impacted—for me to grant that TRO. At best, it would create chaos and confusion—at worst, catastrophe! I appreciate plaintiffs' position that the public has an interest in adherence to the Constitution's structural separation of powers, but I am not going to put people's lives at risk with a somewhat knee-jerk, blanket TRO.

With all that said, I will deny the TROs and set an expedited briefing schedule for the pending preliminary injunction motions. The Government will file its responses to the motions no later than Tuesday, January 22, 2019. The plaintiffs will then file their replies by Monday, January 28. And I will hear oral argument on the preliminary injunction motions on Thursday, January 31 at 3:00 PM.

A word to the wise: There is substantial overlap in the legal claims in these cases, particularly with respect to the Anti-Deficiency Act. I do not intend to hear the same arguments three times. So, the plaintiffs will need to negotiate amongst themselves to determine who will be taking the lead for arguing the different claims.

Accordingly, it is hereby

**ORDERED** that the plaintiffs' TROs in the three above-captioned cases are **DENIED**; and it is further

**ORDERED** that defendants shall file their responses to the pending preliminary injunction motions no later than Tuesday, January 22, 2019; the plaintiffs shall file their replies no later than Monday, January 28, 2019, and a hearing on the preliminary injunction motions shall be set for Thursday, January 31, 2019 at 3:00 PM in Courtroom 18.

**SO ORDERED.**

*[signature]*
RICHARD J. LEON
United States District Judge